IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CHRISTOPHER PYATT and JAMILA PYATT, ) ) ) Plaintiffs, ) ) vs. ) ) INTERNATIONAL LONGSHOREMEN'S ) ASSOCIATION LOCAL 1422, ) CHARLESTON STEVEDORING ) COMPANY, LLC, OTIS WHALEY, and ) INTERNATIONAL LONGSHOREMEN ) ASSOCIATION, ) ) Defendants. ) _____ ) | No. 2:23-cv-05772-DCN  **ORDER** |

This matter is before the court on defendant International Longshoremen's Association's ("ILA") motion to dismiss for failure to state a claim. ECF No. 5. For the reasons set forth below, the court denies the motion.

**I.  BACKGROUND**[1]

Plaintiff Christopher Pyatt ("Mr. Pyatt") is a member of the International Longshoremen's Association Local 1422 ("ILA 1422"). Amend. Compl. ¶ 24, ECF No. 1-1. During the early morning hours of September 24, 2020, Mr. Pyatt was on his way to ILA 1422's hiring hall to receive a daily work assignment. Id. ¶ 32. When Mr. Pyatt arrived, there were no parking spots available at the hiring hall, and he was forced to park across the street. Id. ¶ 33. As Mr. Pyatt walked across the street from where he parked to the hiring hall, he was struck and severely injured by a vehicle driven by defendant Otis

---

[1] The court recites the factual background in the light most favorable to the non-moving party. See Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999).

1

Whaley ("Whaley"). Id. ¶¶ 34–49. Mr. Pyatt alleges that the accident was caused, in part, by ILA 1422's creation of an "unreasonably dangerous traffic condition and inadequate parking facilities." Id. ¶ 53.

ILA 1422 distributes its daily work assignments to its members at the hiring hall based on seniority and on a first come, first served basis. Id. ¶¶ 10–14. Each day, members begin arriving at the hiring hall between 5:00 and 6:30 a.m., and there are far more members seeking work than there are work assignments available. Id. ¶¶ 12–13. Once a worker receives an assignment, the worker must leave the hiring hall and has one hour to reach the job location. Id. ¶¶ 26–27. Because work duties, equipment, and parking at the work site are allocated on a first come, first served basis, workers are incentivized to leave the hiring hall and reach their work sites as soon as possible. Id. ¶ 28–29. Consequently, the early pre-dawn hours at the hiring hall are quite busy with workers hurriedly arriving to receive work assignments and then, just as urgently, departing to reach their job sites on time. Id. ¶ 30.

Since September 2020, the parking available at the hiring hall has been insufficient to support the number of incoming workers, and several of the parking lot's lighting and traffic control devices do not work. Id. ¶¶ 18–19, 21. The lack of available parking spaces regularly requires workers to park across the street and cross four lanes of traffic on foot to reach the hiring hall. Id. ¶ 20. Mr. Pyatt and his wife, plaintiff Jamila Pyatt ("Mrs. Pyatt") (together with Mr. Pyatt, the "Pyatts"), say that ILA 1422 was aware of these unsafe conditions but did not adequately address the situation. Id. ¶¶ 19–20, 22, 29.

On January 10, 2023, the Pyatts filed this lawsuit in the Charleston County Court of Common Pleas against ILA 1422, Whaley, and Whaley's employer, defendant Charleston Stevedoring Company, LLC. Pyatt v. Int'l Longshoremen's Ass'n Loc. 1422, No. 2023-CP-10-00154 (Charleston Cnty. Ct. C.P. filed Jan. 10, 2023). The Pyatts initially asserted claims for negligence and loss of consortium against all three of these defendants. See Compl., ECF No. 1-1.

After filing their initial complaint, the Pyatts became aware that ILA had imposed an emergency trusteeship and was actively managing and overseeing ILA 1422 at the time of the accident. See ECF No. 8 at 3; Amend. Compl. ¶¶ 16–17. Consequently, the Pyatts amended their complaint to add ILA as a defendant on September 21, 2023. See Amend. Compl. ILA received notice of the action on October 13, 2023. ECF No. 1 ¶ 7. On November 13, 2023, ILA removed the case to this court.[2] ECF No. 1. On November 20, 2023, ILA moved to dismiss the claims asserted against it. ECF No. 5. The Pyatts responded in opposition on December 4, 2023, ECF No. 8, and ILA replied on December

---

[2] ILA argues that this court has federal question jurisdiction because the Pyatts' state-law claims "are preempted and governed by federal labor law." ECF No. 1 ¶ 5. For this court to have federal question jurisdiction, the well-pleaded complaint rule typically requires the plaintiff's causes of action to arise out of federal law. See Caterpillar Inc. v. Williams, 482 U.S. 386, 399 (1987). However, the court may have federal question jurisdiction over a plaintiff's state-law claims when those claims are completely preempted by federal law. Taylor v. Giant Food, Inc., 438 F. Supp. 2d 576, 580–81 (D. Md. 2006); see also Chappell v. Int'l Bhd. Elec. Workers Loc. Union 722, 120 F. Supp. 3d 492, 495–96 (D.S.C. 2015), aff'd 645 F. App'x 265 (4th Cir. 2016). "It is settled law that any claims that require the interpretation of a collective bargaining agreement . . . are completely pre-empted by § 301 of the [Labor Management Relations Act, 29 U.S.C. § 185(a)]." Taylor, 438 F. Supp. 2d at 581. Similarly, when the court must resort to interpreting labor union constitutions to determine whether a duty existed to support a state-law tort claim, the tort claim is considered preempted by federal law, and removal to the federal court is proper. See Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71, 502 U.S. 93, 98–103 (1991); Chappell, 120 F. Supp. 3d at 497–98.

11, 2023, ECF No. 11. As such, this matter is fully briefed and now ripe for the court's review.

## II.  STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Lab'ys, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Lab'ys, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. DISCUSSION

At base, ILA argues that federal law considers it and its local chapters separate entities and that it cannot be vicariously liable for the tortious acts of ILA 1422. ECF No. 5-1 at 4 (first citing Carbon Fuel Co. v. United Mine Workers, 444 U.S. 212 (1979); and then citing United Elec., Radio, & Mach. Workers v. NLRB, 986 F.2d 70, 75 (4th Cir. 1993)). Consequently, ILA says that it is only liable for the tortious acts of ILA 1422 if an agency relationship exists between the two entities. Id. at 4–5 (citing Campbell v. Int'l Bhd. of Teamsters, 69 F. Supp. 2d 380, 386 (E.D.N.Y. 1999)). Thus, ILA argues that, because the Pyatts have failed to allege an agency relationship, there can be no liability. Id. at 5. However, the federal cases cited by ILA would not preclude a jury from finding, based on the Pyatts' allegations, that an agency relationship exists, and ILA's motion is denied accordingly.

Specifically, ILA acknowledges that the Pyatts have alleged that ILA installed a trustee to control the operations of ILA 1422 and that ILA had knowledge of the parking problems. ECF No. 5-1 at 1–2. The trusteeship alone, according to ILA, is not sufficient to show an agency relationship because, under federal law, the trustee owes a fiduciary duty to the local chapter, not the international union. Id. at 5–6. Rather, to establish an agency relationship, ILA argues that the Pyatts must to allege facts showing that ILA exercised some degree of management or control over ILA 1422, which it claims the Pyatts have not done. Id. at 7–8. While ILA acknowledges that the amended complaint alleges that ILA controlled and supervised ILA 1422, it says that these allegations are conclusory and therefore inadequate. ECF No. 14 at 2–3. ILA also contends that the

allegations of knowledge are not enough to show that there is an independent duty to intervene. ECF No. 5-1 at 7.

In response, the Pyatts concede that "absent the enacted trusteeship by the ILA over the ILA 1422, the ILA would be entitled to relief." ECF No. 8 at 6. They point, however, to the ILA Constitution, which ostensibly says that the imposition of a trusteeship "requires that the ILA 1422 be supervised and controlled by the ILA." ECF No. 8 at 6. They therefore say that there are questions of fact "as to the ILA's supervisory role over the ILA 1422."[3] ECF No. 8 at 6.

ILA replies by arguing that the Pyatts' reference to the ILA Constitution is insufficient to defeat the motion to dismiss for two reasons. First, the Pyatts failed to respond to ILA's arguments that federal law views an international union and its local chapters as two separate entities and curtails an international union's trustee from controlling a local union's property during the trusteeship. ECF No. 14 at 4. Second, the Pyatts did not refer to any specific factual allegations in their complaint that indicate that the trusteeship might establish an agency relationship. Id. at 5.

ILA is correct that the Pyatts do not directly respond to either its argument that federal law views ILA and its local chapters as separate entities or to its argument that federal law curtails a trustee's ability to control a local chapter. See ECF No. 8. However, ILA also recognizes that it could be held liable if an agency relationship exists. See ECF No. 5-1 at 5 ("Plaintiffs can only hold ILA liable if they allege facts that

---

[3] The court notes that whether there is a factual dispute is a question properly left for summary judgment and is not the standard when addressing a motion to dismiss. See Iqbal, 556 U.S. at 678; Fed. R. Civ. P. 56(c).

plausibly allege an agency relationship existed between the ILA and Local 1422 with respect to the operation of the local's hiring hall.").

Based on the federal law cited by ILA,[4]

> [t]he test to determine whether an agency relationship exists is essentially one of balancing the character of the business affairs subject to the International's control and supervision against those left to the discretion of the local. A court should look at such factors as internal management, contract negotiation and the constitutions of the two organizations.

Alexander v. Loc. 496, Laborers Int'l Union, 778 F. Supp. 1401, 1420 (N.D. Ohio 1991); accord Black Diamond Cola Mining Co. v. Loc. Union No. 8460, United Mine Workers, 597 F.2d 494, 495 (5th Cir. 1979) (noting that a union may be held liable for unlawful acts committed by its agents when committed within the scope of their authority).

In their amended complaint, the Pyatts specifically allege that "the ILA imposed an emergency trusteeship over ILA 1422" and, as a result, "the ILA removed ILA 1422's officers and installed a trustee to take control of ILA 1422's operations." Amend. Compl. ¶¶ 15–16. They go on to say that "during the time of the Trusteeship, all material decisions related to the condition of the hiring hall, the maintenance and availability of parking for the hiring hall, and the work assignment procedure were made by or in conjunction with the ILA." Id. ¶ 17.

The court agrees with ILA that the Pyatts should have focused on specific factual allegations from their complaint rather than referring to the ILA constitution when arguing against the motion to dismiss.[5] See Martin, 980 F.2d at 952. Nevertheless, the

---

[4] The Pyatts do not respond directly to the ILA's assertion that their claims are governed exclusively by federal law and base much of their argument on South Carolina law. ECF No. 8. However, they do argue that the federal cases cited by ILA "stress[] supervision as a significant factor when determining agency." Id. at 7.

[5] The Pyatts' argument on the ILA constitution appears to be a response to ILA's initial reference to its constitution when it quoted EEOC v. Ceres Terminals, Inc., 2001

7

court does not agree with ILA that the Pyatts' allegations are conclusory. See Amend. Compl. ¶¶ 15–17. Rather, the Pyatts have plausibly alleged that an agency relationship existed based on the level of control the trustee exerted over ILA 1422, and the motion to dismiss is denied accordingly. See id.; see also Alexander, 778 F. Supp. at 1420; cf. Campbell, 69 F. Supp. 2d at 386 (granting motion to dismiss when "the complaint contain[ed] no allegations from which it may be inferred that [the local union or trustees] were agents of" the international union).

For this same reason, ILA's argument that an international union does not have a duty to intervene simply because it has knowledge of a local chapter's unlawful acts also fails.[6] ILA cites three cases in support of this proposition from three different circuits. See ECF No. 5-1 at 5. None of these cases concerned appeals over a motion to dismiss, and all three acknowledged that the national or international union could have been held liable if the party opponent had presented evidence to show either an agency relationship or participation in the unlawful acts by the national or international union. See Phelan v. Loc. 305 of United Ass'n of Journeymen, 973 F.2d 1050, 1061–62 (2d Cir. 1992)

---

WL 109811, *8 (N.D. Ill. Feb. 5, 2001), in its memo in support of its motion to dismiss. See ECF Nos. 5-1 at 7; 8 at 6. In that case, the court found that the ILA's trustee was not acting as its agent when it signed a contract based partially on how the ILA constitution describes the role of the trustee. Id. However, unlike this case, Ceres Terminals was decided on a summary judgment motion, which was granted because the EEOC was unable to find evidence in support of its agency theory. Id. at *7–9. At the motion to dismiss stage, the court is not concerned with whether plaintiffs will eventually be able to provide evidence to support their allegations in the complaint. See Martin, 980 F.2d at 952.

[6] ILA appeared to initially assert this argument as showing that they did not have a duty. See ECF No. 5-1 at 7–8. However, it later noted that the trustee's lack of a duty to intervene may also show that the trustee's actions did not proximately cause the Pyatts' injuries. ECF No. 14 at 3 n.2. In either event, the Pyatts' allegations are sufficient to plausibly allege both the duty and proximate cause elements based on the control wielded by the ILA trustee over ILA 1422. See Amend. Compl. ¶¶ 15–17.

8

(affirming summary judgment because "[t]here was no evidence that [the union] participated in, ratified or encouraged the scheme"); Chapa v. Loc. 18, 737 F.2d 929, 932 (11th Cir. 1984) (reversing denial of union's motion for a directed verdict when the plaintiff had introduced no evidence at trial that the union's agents had participated in the action against the plaintiff); Brenner v. Loc. 514, United Bhd. of Carpenters, 927 F.2d 1283, 1289–91 (3d Cir. 1991) (affirming summary judgment when plaintiff failed to produce evidence to show that a genuine issue of material fact existed over whether the international union had ratified possible illegal acts). As previously stated, the Pyatts base their allegations against ILA on more than mere knowledge of ILA 1422's actions. See Amend. Compl. ¶¶ 15–17. Rather, they allege that ILA directly controlled the allegedly tortious acts. See id. Whether the Pyatts will be able to produce enough evidence to support these allegations is a question for a different day, but the allegations are sufficient to survive ILA's motion to dismiss. See Martin, 980 F.2d at 952.

## IV. CONCLUSION

For the reasons set forth above, the court **DENIES** ILA's motion to dismiss.

**AND IT IS SO ORDERED.**

                                             _____
                                             **DAVID C. NORTON**
                                             **UNITED STATES DISTRICT JUDGE**

**January 18, 2024**
**Charleston, South Carolina**