IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CHRISTOPHER PYATT and JAMILA PYATT, <br><br> Plaintiffs, <br><br> vs. <br><br> INTERNATIONAL LONGSHOREMEN'S ASSOCIATION LOCAL 1422, OTIS WHALEY, and INTERNATIONAL LONGSHOREMEN ASSOCIATION, <br><br> Defendants. | No. 2:23-cv-05772-DCN <br><br> **ORDER** |

      This matter is before the court on plaintiffs Christopher Pyatt ("Mr. Pyatt") and Jamila Pyatt's ("Mrs. Pyatt") (together with Mr. Pyatt, the "Pyatts") motion to dismiss defendant Otis Whaley ("Whaley") with prejudice, ECF No. 63, and defendant International Longshoreman's Association Local 1422's ("Local 1422") motion for summary judgment, ECF No. 69.  For the reasons set forth below the court denies the Pyatts' motion to dismiss Whaley with prejudice and grants Local 1422's motion for summary judgment.

**I.  BACKGROUND**

      Mr. Pyatt is a member of Local 1422.  ECF No. 1-1, Amend. Compl. ¶ 24.  Local 1422 is a Charleston, South Carolina based chapter of defendant International Longshoreman's Association ("ILA"), the largest union of maritime workers in North America.  Id. ¶ 8.  Daily, Local 1422 distributes maritime work assignments to its members at its building located at 1142 Morrison Drive, Charleston, South Carolina (the "Hiring Hall").  Id. ¶ 10.  There are more members seeking work than there are work

1

assignments available and work assignments are distributed on seniority and first-come, first-served bases, so members begin arriving at the Hiring Hall as early as 5:00 a.m. Id. ¶¶ 10–14. Once a member receives a work assignment from Local 1422, he has one hour to reach the job location. Id. ¶¶ 26–27. Because work duties, equipment, and parking at the job locations are also allocated on a first-come, first-served basis, members are incentivized to depart the Hiring Hall and reach their job locations as soon as possible. Id. ¶¶ 28–30. Consequently, the pre-dawn hours at the Hiring Hall are quite busy with members hurriedly arriving to receive work assignments and then, just as urgently, departing to reach their job location. Id. ¶ 30.

During the early morning hours of September 24, 2020, Mr. Pyatt drove to the Hiring Hall to obtain a work assignment. Id. ¶ 32. Mr. Pyatt alleges there were no parking spots available at the Hiring Hall that morning, so he "parked his car on the west side of Morrison Drive, across the street" from the Hiring Hall. Id. ¶ 33. As Mr. Pyatt walked across Morrison Drive to access the Hiring Hall, he was struck and severely injured by a vehicle driven by Whaley. Id. ¶¶ 34–49. Mr. Pyatt alleges that the accident was caused, in part, by Local 1422's creation of an "unreasonably dangerous traffic condition and inadequate parking facilities." Id. ¶ 53.

On January 10, 2023, the Pyatts filed this lawsuit in the Charleston County Court of Common Pleas against Local 1422; Whaley; and Whaley's alleged employer, Charleston Stevedoring Company, LLC ("CSC"). Pyatt v. Int'l Longshoremen's Ass'n Loc. 1422, No. 2023-CP-10-00154 (Charleston Cnty. Ct. C.P. filed Jan. 10, 2023). The Pyatts initially asserted claims for negligence and loss of consortium against Local 1422, Whaley, and CSC. See Compl., ECF No. 1-1.

The Pyatts filed a motion to dismiss Whaley with prejudice on November 20, 2024. ECF No. 63. ILA, Local 1422, and CSC (collectively, "defendants" or "non-settling defendants") responded in opposition on December 4, 2024. ECF No. 65.

Local 1422 filed a motion for summary judgment on January 2, 2025. ECF No. 69. The Pyatts responded in opposition on January 30, 2025. ECF No. 80. On February 6, 2025, Local 1422 replied. ECF No. 85. The court held a hearing on both motions on September 18, 2025. ECF No. 119. As such, the motions are fully briefed and now ripe for the court's review.

## II.  STANDARD

### A.  Rule 41 Motion to Voluntarily Dismiss Party

Pursuant to Rule 41(a)(1), a plaintiff may not voluntarily dismiss his or her action without a court order after service of an answer or motion for summary judgment, unless a stipulation of dismissal is signed by all parties. Fed. R. Civ. P. 41(a)(1). Rule 41(a)(2) states that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). A claim may be dismissed with prejudice under Rule 41(a)(2) if the court considers it to be a proper term of dismissal and it is stated in the order of dismissal. See id. (stating that dismissal may be granted "on terms that the court considers proper" and dismissal is without prejudice "unless the order states otherwise").

### B.  Motion for Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  In so doing, the court must view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

## III.  DISCUSSION

The court first analyzes the Pyatts' motion to dismiss Whaley with prejudice and then turns to Local 1422's motion for summary judgment.

### A.  The Pyatts' Motion to Voluntarily Dismiss Whaley

The Pyatts move to dismiss Whaley with prejudice pursuant to Rule 41(a)(2).  ECF No. 63.  The Pyatts "have reached a settlement with Mr. Whaley and resolved their claims against him."  ECF No. 64 at 1.  Whaley has consented to his dismissal, but the Pyatts have not obtained consent from any of the non-settling defendants.  Id.

The purpose of Rule 41(a)(2) is to freely allow voluntary dismissals unless the parties will be unfairly prejudiced.  Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir.

1987); McCants v. Ford Motor Co., 781 F.2d 855, 856 (11th Cir. 1986); Alamance Indus. Inc. v. Filene's, 291 F.2d 142, 146 (1st Cir. 1961), cert. denied, 368 U.S. 831 (1961). "[A] plaintiff's motion under Rule 41(a)(2) should not be denied absent substantial prejudice to the defendant." Rose v. Govan, 2013 WL 254353, at *1 (D.S.C. Jan. 23, 2013) (quoting Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986)). The district court considers the following factors when determining whether to grant a Rule 41(a)(2) motion: (1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation. See Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 358 (10th Cir. 1996); Grover by Grover v. Eli Lilly & Co., 33 F.3d 716, 718 (6th Cir. 1994); Paulucci v. City of Duluth, 826 F.2d 780, 783 (8th Cir. 1987). These factors are not exclusive, however, and any other relevant factors should be considered by the district court depending on the circumstances of the case. See Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997). "In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant." Davis, 819 F.2d at 1273.

The Pyatts provide no argument as to the four factors considered by the court for a Rule 41(a)(2) motion. See ECF No. 64. The non-settling defendants contend that each factor weighs in favor of denying the Pyatts' motion to dismiss Whaley with prejudice. ECF No. 65 at 3–9. The court takes the factors in turn, finding that the dismissal of Whaley will result in substantial prejudice to the non-settling defendants.

First, this action has been pending for two years. See ECF No. 1. The parties have conducted multiple rounds of discovery, and this court has adjudicated several

dispositive motions filed by the non-settling defendants, including Local 1422's motion for summary judgment in this order. See ECF Nos. 25, 69, 113.

Second, neither party has demonstrated that the other has delayed this action or displayed a lack of diligence. Both parties have moved for and consented to amended scheduling orders. See ECF Nos. 43, 57, 78.

Third, the Pyatts' assertion that the non-settling defendants stand only to lose a "tactical advantage" if Whaley is dismissed from this action is an insufficient justification for their motion. See ECF No. 64 at 2. The non-settling defendants have established that they will suffer legal prejudice upon the dismissal of Whaley. See ECF No. 65 at 3–9. The non-settling defendants point out that, because the Pyatts' request to dismiss Whaley is premised on a settlement agreement and covenant not to execute, dismissal of Whaley will extinguish any rights they have to seek contribution from Whaley under the South Carolina Contribution Among Tortfeasors Act ("SCCAT"), S.C. Code Ann. § 15-38-10 et seq.[1] Id. at 4. Further, they argue that dismissal of Whaley will bar a jury from allocating fault to Whaley—the driver of the vehicle of that struck Mr. Pyatt—under

---

[1] Concerning the effect of a release or covenant not to sue or enforce a judgment, the South Carolina Contribution Among Tortfeasors Act states:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
>
> (1) it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and
>
> (2) it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

S.C. Code Ann. § 15-38-50.

South Carolina law.  Id. at 5 (citing Smith v. Tiffany, 799 S.E.2d 479, 486 (S.C. 2017) ("[I]n section 15-38-50 the legislature expanded the scope of a settling tortfeasor's immunity to include protection from liability to nonsettling tortfeasors.")).

Fourth, the present stage of the case does not support dismissal of Whaley.  The "present stage of the litigation" factor looks to whether "discovery is nearly complete and dispositive motions are imminent."  Covington v. Syngenta Corp., 225 F. Supp. 3d 384, 391 (D.S.C. 2016).  "Courts typically deny motions for voluntary dismissal on this basis when the case has advanced to the summary judgment stage."  Deloach v. EK Real Est. Servs. of NY, LLC, 2022 WL 17625911, at *6 (D.S.C. Dec. 13, 2022).  That pattern reflects courts' concern with the prejudice that results when the parties have already incurred substantial costs for discovery.  See, e.g., Howard v. Inova Health Care Servs., 302 F. App'x 166, 179–80 (4th Cir. 2008) (collecting cases affirming district court denials of motions for voluntary dismissal that were filed after the discovery period); Seligman v. Tenzer, 173 F. App'x 280, 283 (4th Cir. 2006) (affirming a district court's denial of a motion for voluntary dismissal where the plaintiff filed the motion "after the close of discovery, after defendants had already filed their motion for summary judgment, and within three weeks of the scheduled trial date"); Miller v. Terramite Corp., 114 F. App'x 536, 540 (4th Cir. 2004) (affirming a district court's finding that the plaintiff's motion for voluntary dismissal was "untimely and would waste judicial resources" because the motion was filed "well after discovery had closed" and a dispositive order was imminent).

The parties have engaged in a substantial volume of discovery in the two years that this case has been pending.  See Covington, 225 F. Supp. 3d at 391.  They have

utilized a significant amount of resources moving this case towards its trial scheduled for early 2026. See Howard, 302 F. App'x at 179–80. The court has ruled on three dispositive motions, including Local 1422's motion for summary judgment in this order. See Deloach, 2022 WL 17625911, at *6. Finally, the South Carolina Supreme Court's interpretation of SCCAT is clear in that dismissal of Whaley would prohibit the non-settling defendants from seeking an allocation of liability to Whaley and his contribution as a joint tortfeasor—issues that go to the heart of this case and that are more than a mere "tactical advantage." See Smith, 799 S.E.2d at 486.

Upon consideration of the factors for a Rule 41(a)(2) motion, the court finds that the non-settling defendants will be substantially prejudiced if Whaley is dismissed from this action. See Davis, 819 F.2d at 1273. As such, the court denies the Pyatts' motion to dismiss Whaley with prejudice.

**B. Local 1422's Motion for Summary Judgment**

Local 1422 moves for summary judgment on the Pyatts' negligence and loss of consortium claims. ECF No. 69. As the primary basis underlying its motion, Local 1422 argues that it did not owe Mr. Pyatt any legally cognizable duty of care, and therefore the Pyatts' claims must fail.[2]

---

[2] Local 1422 asserts two additional grounds for its motion for summary judgment: that Mr. Pyatt's "own negligence (in crossing the roadway outside of a crosswalk, failing to yield to traffic, and failing to heed his surroundings) exceeds any de minimis negligence" of Local 1422 and "Whaley's negligent driving superseded any alleged negligence of [Local 1422]." ECF No. 69 at 1. Neither additional ground is appropriate for summary judgment.

To the extent that Local 1422 moves for summary on damages under a comparative negligence theory, "comparison of the plaintiff's negligence with that of the defendant is a question of fact for the jury to decide." Bloom v. Ravoira, 529 S.E.2d 710, 713 (S.C. 2000) (quoting Creech v. S.C. Wildlife & Marine Res. Dep't, 491 S.E.2d 571,

To prevail in a negligence action, a plaintiff must demonstrate that "(1) defendant owes a duty of care to the plaintiff; (2) defendant breached the duty by a negligent act or omission; (3) defendant's breach was the actual or proximate cause of the plaintiff's injury; and (4) plaintiff suffered an injury or damages." Doe v. Marion, 645 S.E.2d 245, 250 (S.C. 2007). "An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." Bishop v. S.C. Dep't of Mental Health, 502 S.E.2d 78, 81 (S.C. 1998). "If there is no duty, then the defendant in a negligence action is entitled to summary judgment as a matter of law." Hurst v. E. Coast Hockey League, Inc., 637 S.E.2d 560, 562 (S.C. 2006); see also Hopson v. Clary, 468 S.E.2d 305, 307 (S.C. Ct. App. 1996) ("If the evidence as a whole is susceptible to only one reasonable inference, no jury issue is created and [summary judgment] is properly granted.")

The existence and scope of the duty are questions of law for the court. Miller v. City of Camden, 451 S.E.2d 401, 403 (S.C. Ct. App. 1994), aff'd as modified, 494 S.E.2d 813 (S.C. 1997); Roe v. Bibby, 763 S.E.2d 645, 648 (S.C. Ct. App. 2014). "Foreseeability of injury, in and of itself, does not give rise to a duty." Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co., 586 S.E.2d 586, 588 (S.C. 2003). "Under South Carolina law, 'there is no general duty to control the conduct of another or

---

575 (S.C. 1997)). Accordingly, "summary judgment is generally not appropriate in a comparative negligence case." Id.
   As to the issue of causation, South Carolina courts recognize that "proximate cause is ordinarily a jury question." Tuten v. Joel, 763 S.E.2d 54, 61 (S.C. Ct. App. 2014); Pope v. Heritage Cmtys., Inc., 717 S.E.2d 765, 771 (S.C. Ct. App. 2011).

to warn a third person or potential victim of danger.'" In re Blackbaud, Inc., Customer Data Breach Litig., 567 F. Supp. 3d 667, 682 (D.S.C. Oct. 19, 2021) (citing Faile v. S.C. Dep't of Juv. Just., 566 S.E.2d 536, 546 (S.C. 2002)). However, South Carolina recognizes five exceptions to that rule:

> 1) where the defendant has a special relationship to the victim; 2) where the defendant has a special relationship to the injurer; 3) where the defendant voluntarily undertakes a duty; 4) where the defendant negligently or intentionally creates the risk; and 5) where a statute imposes a duty on the defendant.

Faile, 566 S.E.2d at 546.

The Pyatts' complaint alleges that Local 1422 owed them a duty to "protect against activities, artificial conditions, and conduct on its property" and "provide a safe premises for its Members to report and receive work assignments." Amend. Compl. ¶¶ 47–48. Further, the Pyatts pleaded that Local 1422 "knew or should or should have known about the unreasonably dangerous traffic condition and inadequate parking facilities present on its premises." Id. ¶ 48. The Pyatts argue that South Carolina law provides three independent bases on which the court may find that Local 1422 owed Mr. Pyatt a duty of care: (1) "Local 1422 created the risk that caused Mr. Pyatt's injuries," (2) "Local 1422 voluntarily provided a parking to its members," and (3) "Local 1422 owned the property abutting the roadway" on which Mr. Pyatt was injured. ECF No. 80 at 11. The court takes each basis asserted by the Pyatts and the parties' arguments in turn.

### 1. "Creation of the Risk" Exception

"A common law duty may arise where a defendant creates a situation that [it] knew or should have known posed a substantial risk of injury to a plaintiff. In re Blackbaud, 567 F. Supp. 3d at 682 (citing Edwards v. Lexington Cnty. Sheriff's Dep't, 688 S.E.2d 125, 130 (S.C. 2010)) (internal quotation marks omitted).

10

The Pyatts contend that Local 1422 owed Mr. Pyatt a duty of care because it created an "unreasonable risk of harm to its members by requiring that workers be physically present at the Hiring Hall while providing dangerous and inadequate parking." ECF No. 80 at 15.  They posit that Local 1422 "escalated the risk of harm to its members when it issued more than 2,000 additional work credentials, increasing pedestrian and vehicle traffic." Id.  To support their argument, the Pyatts point to a May 24, 2019 letter written by Kenneth Riley ("Riley"), the former president of Local 1422, to Harold Dagget, the president of the ILA. Id. at 1–2.  In the letter, Riley states that 2,400 new members received work credentials in 2018, and that "Local 1422 does not have the floor space or parking to accommodate the additional workers." ECF No. 80-1 at 1–2.  Riley writes that allowing the newly credentialed and current workforce to assemble in the Hiring Hall together "will be one of the most irresponsible things [Local 1422] could ever do." Id. at 2.  The Pyatts read the Riley letter as having put Local 1422 on notice of its allegedly "inadequate and unsafe parking conditions." ECF No. 80 at 2.

Rulings of this court and the Supreme Court of South Carolina analyzing the creation of the risk exception are distinguishable from the instant case.  In Doe 1 v. Varsity Brands, this court held that a class of youth cheerleader plaintiffs had established that their former coach owed them a duty of care under the creation of the risk exception because he "created an environment that allowed Rockstar Cheer coaches to prey on minor athletes." 2023 WL 7222851, at *1 (D.S.C. Nov. 2, 2023).  This court's determination was based on the plaintiffs' allegations that the coach maintained a residence to host illicit parties at which he and other coaches consumed alcohol and drugs with minor athletes, ignored evidence of sexual abuse by coaches, and facilitated the

11

sexual abuse by placing minor athletes and coaches in unmonitored, one-on-one settings. Id.

In Blackbaud, a class of plaintiffs sued the software company Blackbaud for injuries related its collection and maintenance of data gathered from various non-profit entities. In re Blackbaud, 567 F. Supp. 3d at 672. The personal data and health information of the plaintiff class was obtained in a targeted cyberattack on Blackbaud's computer network, copied, and held for ransom. Id. at 672–73. The plaintiff class alleged that the cyberattack was the result of Blackbaud's deficient security programs that failed to comply with industry and regulatory standards. Id. at 673. At the 12(b)(6) stage, this court found that the plaintiff class had sufficiently alleged that Blackbaud owed them a duty of care under the creation of the risk exception because Blackbaud had "failed to correct, updated, or upgrade its security protections" after being notified and acknowledging that its network systems were at risk of cyberattacks. Id. at 682.

The South Carolina Supreme Court in Edwards held that a county and its sheriff's department owed a duty of care to a domestic violence victim under the creation of the risk exception after she was attacked by her abuser at his bond revocation hearing. Edwards, 688 S.E.2d at 129–30. A member of the sheriff's office arranged for the hearing to take place without security and "strongly encouraged" the victim's presence, even though he was "well aware of the [abuser's] violent tendencies towards [the victim]." Id. at 130. At the hearing, the abuser pinned the victim to the wall and struck her at least three times on head. Id. at 128.

The common jurisprudential vein that runs through Doe 1, Blackbaud, and Edwards is that the creation of the risk exception gives rise to a duty of care where an act

or omission by the defendant results in a substantial risk of the specific injury suffered by the plaintiff. See Doe 1, 2023 WL 7222851, at *4 (finding that a defendant owed a duty of care where he "created the environment that allowed" and "facilitate[d]" sexual abuse of minor athletes); In re Blackbaud, 567 F. Supp. 3d at 682 (finding that a defendant owed a duty of care when its failure to correct vulnerable network systems about which the defendant had notice created a substantial risk of cyberattack on plaintiffs' stored data); Edwards, 688 S.E.2d at 129–30 (finding that defendants owed a duty of a care where they arranged for an in-person hearing at which a domestic violence victim was attacked by her abuser, though the defendants knew of the abuser's violent tendencies). Accordingly, this court and South Carolina courts apply the creation of the risk exception by analyzing the acts or omissions of the defendant in relation to the injury of the plaintiff—not by engaging in a post hoc inquiry of whether any injury was foreseeable. See In re Blackbaud, 567 F. Supp. 3d at 680 ("It is the relationship between the parties, not the potential 'foreseeability of injury,' that determines whether the law will recognize a duty in a given context.") (quoting Williams v. Preiss-Wal Pat III, LLC, 17 F. Supp. 3d 528, 535 (D.S.C. 2014)); Charleston Dry Cleaners, 586 S.E.2d at 588 ("This Court, however, has held that foreseeability of injury is an insufficient basis for recognizing a duty.").

      Neither the case law nor the record support a finding that Local 1422 owed Mr. Pyatt a duty of care under the creation of the risk exception. At the outset, the Pyatts' contentions—that Local 1422 "created an unreasonable risk" that Mr. Pyatt would be injured in a vehicle-pedestrian collision on a public roadway by "requiring that members to be physically present at the Hiring Hall" and providing "inadequate and unsafe

13

parking"—are rooted in foreseeability rather than the relationship and actions of the parties. See Charleston Dry Cleaners, 586 S.E.2d at 588. Further, The Pyatts provide no evidence that Local 1422's available parking in its three parking lots created a substantial risk of a vehicle-pedestrian collision. See In re Blackbaud, 567 F. Supp. 3d at 680. The Pyatts' reliance on the Riley letter is insufficient to establish a duty of care because the letter only warns of "a willful violation of the fire safety standards" due to exceeding the Hiring Hall's capacity. ECF No. 80-1 at 3. Thus, the Riley letter was not notification or acknowledgement by Local 1422 of the risk of a vehicle-pedestrian collision on the public roadway, much less in Local 1422's parking lots. See In re Blackbaud, 567 F. Supp. 3d at 682. Finally, when asked at his deposition, Mr. Pyatt stated that Local 1422 had not authorized or given him permission to park across street from the Hiring Hall in a lot that Local 1422 did not own or control, but rather that it was his own decision to park there, believing (perhaps mistakenly) that no parking spaces in the Local 1422 lots were available. ECF No. 69-2, Pyatt Dep. 208:3–24, 211:2–212:6. Thus, Local 1422 did not enable or facilitate the vehicle-pedestrian collision that caused the injuries to Mr. Pyatt. See Doe 1, 2023 WL 7222851, at *4; Edwards, 688 S.E.2d at 129–30. Because no act or omission by Local 1422 created a substantial risk of the vehicle-pedestrian collision suffered by Mr. Pyatt in the public roadway, the court finds that Local 1422 did not owe a duty of care to Mr. Pyatt under the creation of risk exception. See Doe 1, 2023 WL 7222851, at *4.

### 2. "Voluntary Undertaking" Exception

South Carolina has "long recognized that one who assumes to act, even though under no obligation to do so, thereby becomes obligated to act with due care." Miller,

14

451 S.E.2d at 404 (citing Crowley v. Spivey, 329 S.E.2d 774 (S.C. Ct. App. 1985)).

"The recognition of a voluntarily assumed duty in South Carolina jurisprudence is rooted in the Restatement of Torts." Johnson v. Robert E. Lee Acad., Inc., 737 S.E.2d 512, 514 (S.C. Ct. App. 2012) (collecting South Carolina cases). Section 323 of the Restatement of Torts states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (A.L.I. 1965) ("Section 323"). South Carolina courts limit application of the voluntary assumption exception to "situations in which a party has voluntarily undertaken to prevent physical harm, not economic injury." Hendricks v. Clemson Univ., 578 S.E.2d 711, 714 (S.C. 2003); see also Wright v. PRG Real Est. Mgmt., Inc., 826 S.E.2d 285, 293 (S.C. 2019) ("[A] landlord who voluntarily undertakes to provide security measures may be liable if he negligently performs the undertaking.").

The Pyatts' assert that "Local 1422 owed Mr. Pyatt a duty of care because it voluntarily provided parking to its members." ECF No. 80 at 15. They argue that "safe parking is 'necessary for the protection of one's things.'" Id. at 16 (quoting Restatement (Second) of Torts § 323 (A.L.I. 1965)).

The Pyatts' contention that Local 1422 voluntarily assumed a duty of care to Mr. Pyatt is outside the bounds of Section 323 and thus cannot establish a duty of care under

15

South Carolina law.  The court is without any evidence that Local 1422 provided parking for the protection of its members or their vehicles.  See Amend. Compl.; ECF No. 80.  In fact, the Pyatts' negligence claim relies on a contrary position: that Local 1422 provided parking for its workers because "[their] presence at the Hiring Hall was required to receive work assignments."  ECF No. 80 at 6.  It cannot be said that Local 1422 failed to exercise "reasonable care" regarding its parking lots.  See Restatement (Second) of Torts § 323(a) (A.L.I. 1965).  The parties do not dispute that the 191 total parking spaces provided by Local 1422 in its three parking lots exceeded the number required by the Charleston zoning ordinances.  See ECF Nos. 69-1 at 11, 80 at 6 n.2.  Further, the vehicle-pedestrian collision did not occur because Mr. Pyatt relied upon Local 1422's provision of parking.  See Restatement (Second) of Torts § 323(b) (A.L.I. 1965).  It is undisputed that Mr. Pyatt had parked in a vacant lot across the street from the Hiring Hall prior to the collision.  See Amend. Compl. ¶ 14; Pyatt Dep. 98:6–11.  Because Local 1422 did not voluntarily assume a duty of care to Mr. Pyatt by providing a parking for its workers under Section 323 of the Restatement of Torts, the court finds that the voluntary undertaking exception does not apply.  See Miller, 451 S.E.2d at 404.

### 3. Property Abutting Public Roadway

"South Carolina common law only imposes a duty for highway conditions where an individual or business has undertaken an activity that creates an artificial condition on the highway which is dangerous to travelers."  Wright v. S.C. Dep't of Transp., 877 S.E.2d 788, 791 (S.C. Ct. App. 2022) (quoting Skinner v. S.C. Dep't of Transp., 681 S.E.2d 871, 873 (S.C. 2009)).  The owner of land abutting a public roadway, who neither possess nor controls the roadway, is not liable for "conditions occurring on that highway

16

which are normal and natural, and not the result of artificial conditions." Skinner, 681 S.E.2d at 873. The South Carolina Supreme Court has stated that "[e]xamples of artificial conditions created by an abutting property owner might include materials spilled on a highway or smoke emissions that obstruct visibility." Wright, 877 S.E.2d at 791.

The Pyatts' content that "Local 1422 owed a duty to Mr. Pyatt not to create aa (sic) dangerous condition on Morrsion Drive." ECF No. 80 at 16. They argue that Local 1422 created "a daily beehive of activity, congestion, and chaos at the Hiring Hall" each morning. Id. at 16–17.

As a threshold matter, Local 1422 does not possess or control Morrison Drive—the public roadway abutting the Hiring Hall. See Skinner, 681 S.E.2d at 873. Further, traffic is a "normal and natural" condition on Morrison Drive. See id. The Pyatts offer no evidence, beyond speculation, of any activity undertaken by Local 1422 at the Hiring Hall that created conditions for increased risk of vehicle-pedestrian collisions on Morrison Drive such as an obstruction in the roadway. See Wright, 877 S.E.2d at 791. Consequently, the court finds that Local 1422 did not owe Mr. Pyatt a duty of care by virtue of its ownership and operation of the Hiring Hall abutting Morrison Drive.

Because the court finds that Local 1422 did not owe Mr. Pyatt a duty of care under any of the bases asserted by the Pyatts, the Pyatts have failed to establish an essential element in their claims of negligence. See Bishop, 502 S.E.2d at 81. As such, the court grants Local 1422's motion for summary judgment as to the Pyatts' negligence and loss of consortium claims. See Hurst, 637 S.E.2d at 562.

## IV. CONCLUSION

For the foregoing reasons the court **DENIES** the Pyatts' motion to dismiss Whaley with prejudice and **GRANTS** Local 1422's motion for summary judgment.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**November 20, 2025**
**Charleston, South Carolina**